UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA

                **Hon. Hugh B. Scott**

                11CR211A

      v.

                **Report & Recommendation**

Marchello M. Gildersleeve,

      Defendant.

Before the Court are motions filed on behalf of defendant Marchello M. Gildersleeve (Docket Nos. 19 & 26).[1]

**Background**

Defendant, Marchello Gildersleeve ("Gildersleeve") was indicted on June 23, 2011 with illegal possession of a firearm and ammunition in violation of 18 U.S.C. §922(g) and §924(a)(2). The indictment also contains a forfeiture allegation regarding the firearm and ammunition.

---

[1] To the extent the motion seeks non-dispositive relief, such requests are the subject of a separate Decision & Order.

1

(Docket No. 1).

The defendant moves to suppress evidence and statements obtained on April 29, 2011 by members of the Niagara Falls Police Department pursuant to a search warrant issued by a Niagara Falls City Court Judge on April 21, 2011. (Docket No. 26 at ¶¶ 2-3). The defendant asserts that there was insufficient probable cause to justify the search Gildersleeve or his apartment. The defendant further argues that if the search warrant is found to be invalid, any post-<u>Miranda</u> statements made by Gildersleeve must be suppressed as "fruit of the poisonous tree." (Docket No. 26 at ¶10, 13).

A suppression hearing was commenced on October 10, 2012. (Docket No. 33). Detective John Galie ["Galie"] of the Niagara Falls Police Department testified that on April 21, 2011, he submitted an application for a search warrant to Niagara Fall City Court Judge Diane Vitello. (Docket No. 33 at 5). The search warrant sought authority to search the person of Gildersleeve as well as a search of his premises at 527 24th Street, Apt. 1. (Defendant's Exhibit A). In support of the search warrant application, Galie stated that in February and March of 2011, he and other officers conducted an investigation into the 'illegal use , possession and sale of marijuana" at the defendant's apartment. He testified that he worked with confidential informant #26999 "(CI"). According to Galie's affidavit, the CI was "of known reliability and gave sworn testimony in the Niagara Falls City Court and also in Buffalo Federal Court, [and] this testimony resulted in different suspects being convicted of numerous crimes" and "narcotics seizures starting in 2009 and [continuing] until the present." (Defendant's Exhibit A, page 1).[2] Galie's search warrant

---

[2] At the suppression hearing, Galie testified that he had been working with this CI for four years. (Docket No. 33 at 20).

application further advised Judge Vitello that the CI stated that marijuana was being sold by Gildersleeve at his apartment at 527 24th Street; that Gildersleeve sometimes possesses weapons on his person and at his residence; that Gildersleeve is in possession of a black handgun that the CI "has observed on numerous occasions;" and that the CI "has personally observed a large quantity of marijuana and MDMA in the residence[3]." (Defendant's Exhibit A, page 2 ¶¶ A-G). Galie then advised Judge Vitello that he conducted an independent investigation in which Gildersleeve was observed "in front and in the rear of 527 24th Street Apt.#1" during "all hours during the day" through surveillance of the apartment. (Defendant's Exhibit A, page 2). Further, he stated that he checked with the New York State Department of Motor Vehicles, the Niagara Falls Police Department, and the United States Drug Enforcement Administration to confirm that Gildersleeve resides at 527 24th Street, Apt. #1. (Defendant's Exhibit A, page 2). Finally, Galie advised Judge Vitello that in March of 2011, a "controlled buy" was conducted in which the CI purchased marijuana. In this regard, Galie stated:

> [Y]our writer's (sic) met with #26999 at a specific location in the city. At this specific location, #26999 was searched for money and/or contraband, none was located. #26999 was then instructed to contact Marchello M. Gildersleeve and arrange a marijuana purchase. After this was completed, #26999 was provided with a specific amount of money by Detective Galie via NID funds and then brought to the area of 527 24th Street Apt. #1, SBL #159.26-1-69. Writer's (sic) observed #26999 walk directley to and enter 527 24th Street Apt. #1. After a few minutes #26999 was observed walking back to a pre-arranged location. #26999 was kept in constant visual contact by the writers. At this pre-arranged location #26999 handed detective Galie a plastic bag that contained

---

[3] Galie's affidavit states that the CI observed these drugs at "524 24th St." not 527 24th Street. (Defendant's Exhibit A, page 2, ¶ G). Neither party discusses this discrepancy. It is likely that this is a typographical error inasmuch as all other the references to Gildersleeves's residence refer to 527 24th Street.

3

> suspected marijuana and stated that this was bought directly from
> Marchello M. Gildersleeve, inside 527 24th Street Apt. #1. The CI
> was again checked for money and/or contraband, none was located.
> The marijuana was field tested with positive results for marijuana
> and secured. This substance was sent to the Niagra County Lab for
> further analysis.

(Defendant's Exhibit B pages 2-3). Galie testified that Judge Vitello signed the search warrant on that same day, April 21, 2011. (Docket No. 33 at 5-6; Defendant's Exhibit B). The search warrant authorizes the "immediate search" of Gildersleeve, as well as the search of the premises at 527 24th Street, Apt. 1. (Defendant's Exhibit B).

At the suppression hearing, Galie testified that on April 29, 2011, he received a phone call from Lt. Brian DelPorto who advised Galie that a patrol vehicle just "called out a warrant check on Marchello Gildersleeve." (Docket No. 33 at 7). Galie was told that Gildersleeve was standing at the corner of 24th Street and Ferry Street in Niagara Falls. He stated that he told DelPorto to "take him into custody" and that he would be there in minutes. (Docket No. 33 at 7). When Galie arrived at the corner of 24th and Ferry Streets, Gildersleeve was there with DelPorto and two other officers. (Docket No. 33 at 8). The defendant was cuffed in the front at this time. (Docket No. 33 at 13). Galie testified that he, Gildersleeve and the other officers proceeded to 527 24th Street, which was only about 20 to 30 yards away from the corner where Gildersleeve was stopped; and that he advised the defendant that he had a search warrant for the premises. Galie further testified that he then read Gildersleeve his <u>Miranda</u> warnings. Galie stated that he asked the defendant if he understood his rights, and that the defendant stated that he did understand. (Docket No. 33 at 9). According to Galie, they proceeding directly inside Gildersleeve's apartment and he turned to Gildersleeve and asked him: "Is there anything in the

house that can get you in trouble?" (Docket No. 33 at 9). Galie testified that Gildersleeve responded: "I have a rifle in the closet." (Docket No. 33 at 10). Galie stated that he walked to the closet and found a .22 caliber pistol grip rifle which Gildersleeve acknowledged belonged to him, saying: "That's mine, that's all I've got." (Docket No. 33 at 10). A subsequent search revealed five .22 caliber rounds next to the rifle and other ammunition in a box in the crawl-space attic. (Docket No. 33 at 11). On cross-examination, Galie acknowledged that Gildersleeve's statement "I have a rifle in the closet" is contained in the 710.30 report (Government Exhibit 1) and that the statement to the effect that: "that's mine, that's all I got" is contained in a police report (Government Exhibit 2), but that neither statement is contained in both documents. (Docket No. 33 at 18).

The suppression hearing was continued on January 16, 2013 at the request of the defendant (Docket No. 34 at page 6) to obtain testimony regarding the specific location where the officers stopped the defendant prior to the execution of the search warrant. (Docket No. 36). Michael Corcoran, a police officer with the Niagara Falls Police Department, testified that he was driving on the 500 block of 24th Street towards Walnut Street on April 29, 2011 when he saw Gildersleeve walking down the east side of the road. (Docket No. 39 at 5). Corcoran stated that next door to 527 24th Street is an empty lot, and then two houses before you get to the corner of Ferry Avenue. (Docket No. 39 at 6). According to Corcoran, Gildersleeve was in the area of the empty lot and the second house from the corner – about 50 to 75 feet from 527 24th Street– when Corcoran first observed Gildersleeve. (Docket No. 39 at 6; designated as "O" on Exhibit F). Gildersleeve was walking away from the house at that time. (Docket No. 39 at 7). Corcoran testified that he radioed for a warrant check on Gildersleeve. Corcoran was initially informed

5

that there were no active warrants for Gildersleeve, but was then asked to contact Lieutenant Del Porto immediately. (Docket No. 39 at 7). Corcoran called Del Porto who requested that if Corcoran saw Gildersleeve again, he should detain him because they were going to execute a search warrant. (Docket No. 39 at 8). Corcoran stated that by the time he spoke with Del Porto, he no longer saw Gildersleeve. (Docket No. 39 at 8). Approximately 30 minutes later, after responding to a couple of other calls, Corcoran was contacted by Del Porto who asked him to go back to the area near 527 24th Street. (Docket No. 39 at 8, 12). When he arrived at the 400 block of 24th Street, officers from the Narcotics unit arrived at the same time. (Docket No. 39 at 8). Corcoran stated he observed and stopped Gildersleeve near the corner of 24th Street and Ferry Avenue – approximately 100 to 200 feet from 527 24th Street. (Docket No. 39 at 9; designated as "X" on Exhibit F). Gildersleeve was not searched when he was stopped on corner of 24th Street and Ferry Avenue. (Docket No. 39 at 14). Gildersleeve was then placed in handcuffs by the Narcotics officers and walked back to 527 24th Street (Docket No. 39 at 9-10). Corcoran testified that he followed them over and stayed out in front of the house until he was "cleared" to respond to other calls. (Docket No. 39 at 10). Corcoran was eventually called back to 527 24th Street to transport Gildersleeve after he had been arrested. (Docket No. 39 at 10).

**Probable Cause**

In a supplemental motion[4], the defendant argues that probable cause did not exist in support of the search warrant in this case because: (1) the application relied on a single controlled purchase which occurred approximately one month prior to the application; and (2) the

---

[4] The defendant's initial omnibus motion (Docket No.19) did not raise this issue.

confidential informant was not brought before the issuing judge for an assessment of credibility. (Docket No. 26 at page 5). The defendant does not present any authority in support of these arguments.[5]

"[P]robable cause to search is demonstrated where the totality of circumstances indicates a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" Walczyk v. Rio, 496 F.3d 139, 156 (2d Cir.2007) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). Although the "existence of probable cause is a question of law for the court," a reviewing court nevertheless must "accord considerable deference to the probable cause determination of the issuing magistrate." Id. at 157.

Here, the search warrant application advised the issuing judge of the following: (1) that the affiant was involved in an investigation into the defendant's "illegal use, possession and sale of marijuana;" (2) that a confidential informant had advised the affiant that Gildersleeve was selling drugs at 527 24th Street in Niagara Falls; (3) that the confidential informant personally observed Gildersleeve in possession of weapons; (4) that a controlled purchase in March of 2011 was conducted wherein the confidential informant purchased marijuana directly from Gildersleeve inside 527 24th Street; (5) that in April of 2011, the confidential informant advised the affiant that the informant had personally observed a large quantity of marijuana and MDMA in the defendant's residence; (6) the affiant conducted surveillance of 527 24th Street and observed Gildersleeve at that location during all hours of the day; and (7) that the affiant checked with the Department of Motor Vehicles, United States Drug Enforcement Agency and Niagara

---

[5] The defendant's three post-hearing briefs focus on the fact that Gildersleeve was detained prior to the execution of the search warrant and do not address the probable cause arguments in any manner. (Docket Nos. 34, 40 and 45).

Falls Police Department records to confirm that Gildersleeve resided at 527 24th Street.

It appears that the confidential informant was not brought before the issuing judge in this case. However, such is not *required* to establish probable cause for a search warrant. As to the reliability of the confidential informant involved in this case, the affidavit in support of the search warrant states that the confidential informant "is of known reliability and gave sworn testimony in the Niagara Falls City Court and also in Buffalo Federal Court, this testimony resulted in different suspects being convicted of numerous crimes. [The informant's] information has resulted in narcotics and money seizures starting in 2009 and this has continued until the present. The information in City Court that (sic) this testimony resulted in ... warrants being issued for suspects with felony charges pending in the Niagara County District Attorney's Office." (Docket No. 26-1 at page 2). The defendant has presented no factual or legal basis to refute or question the averment that the confidential informant utilized in this matter was used by various members of the Niagara Falls Police Department on multiple occasions, that the informant proved to be reliable, and that the information obtained from the informant resulted in felony arrests and convictions.

The issue of whether it is necessary to bring a confidential informant before the issuing judge when seeking a warrant based upon the informant's information was discussed in <u>Kirkland v. City of New York</u>, 2007 WL 1541367 (E.D.N.Y.,2007):

> However, there is no legal requirement under either New York or Federal law that a confidential informant personally present sworn testimony before a warrant may issue. The Supreme Court requires judges to evaluate probable cause under a "totality of the circumstances" test by analyzing the informant's veracity, reliability, and the basis of his or her knowledge. ... New York law dictates the use of the two-pronged "Aguilar-Spinelli" analysis

> regarding an informant's reliability and the basis of his or her knowledge. ... Under either standard, the judge was not required to interview the CI in person. The affidavit provided evidence that the CI had a history of veracity through prior buys, and the claim that there were drugs likely to be found in the apartment was based on the CI's personal knowledge obtained through the actual drug purchases from this apartment. ... Together, these factors are more than adequate to satisfy the standards set by either Federal or New York law.

See also United States v. Pond, 523 F.2d 210 (2d. Cir. 1975)(a recitation that the informant previously provided information resulting in arrests and seizures of large quantities of marijuana was alone sufficient to establish the informant's reliability.); United States v. Ebare, 416 F.Supp. 398 (N.D.N.Y. 1976)(Trustworthiness may also be established if the informant has previously supplied reliable information to law enforcement agencies. An affidavit stating that the informant had given information in the past which was accurate and had led to several arrests is sufficient); United States v. Hillard, 701 F.2d 1052 (2d. Cir. 1983)(The government adequately established the reliability of the informants by reciting past information supplied by each that led to an arrest and conviction, or was independently corroborated.). The information contained in the search warrant application was sufficient for the issuing judge to assess the credibility of the informant for purposes of a probable cause determination in this case.

The defendant also asserts that the information in the search warrant application was insufficient or too stale to support the issuance of the warrant. As outlined above, the search warrant application provides information from a confidential informant that had proven reliable in the past, to the effect that Gildersleeve was selling drugs out of 527 24th Street in Niagara Falls and that the informant had personally observed the defendant in possession of drugs and guns. The application also contains information that the informant participated in a controlled purchase

of drugs from Gildersleeve inside 527 24th Street in March of 2011 and observed Gildersleeve in possession of large quantities of drugs in April of 2011, less than one month prior to the search warrant application. This information is sufficient to establish probable cause for the issuance of the search warrant. While the search warrant application does not list the exact date of the controlled purchase, the omission of the exact date of the controlled purchase does not deprive the issuing judge essential information to make a probable cause determination. United States v. Hicks, 575 F.3d 130 (1st Cir. 2009)(The totality of the circumstances stated in search warrant affidavit was more than sufficient to establish probable cause to believe that evidence of a crime would be found at the identified residence, such that defendant's request for a Franks hearing was properly denied, even if the exact date of the second controlled purchase of drugs was not given in the affidavit; date of that purchase was not necessary to the probable cause finding.); United States v. Formaro, 152 F.3d 768 (8th Cir. 1998)(Omission from search warrant application of specific dates of controlled buys conducted by confidential informants and of number of buys conducted did not deprive warrant judge of information essential to probable cause determination, where application stated that defendant had been under investigation for over a year and that during that time informants had made controlled purchases, supporting inference that drug sales from premises for which warrant was sought were ongoing and that defendant was more than one-time drug seller.) Here, the information relating to the controlled purchase was further corroborated by subsequent information relating to Gildersleeve's possession of a large quantity of marijuana and MDMA sometime in April of 2011. This evidence of on-going conduct in drug trafficking was not too stale to justify the issuance of the search warrant granted on April 21, 2011.

Based on the above, the motion to suppress the evidence obtained as a result of the search of 527 24th Street, Niagara Falls on April 29, 2011 should be denied.

**Detention and Statements**

The defendant argues that he was unlawfully arrested prior to the search of his residence. (Docket No. 34 at page 3). It is undisputed that Gildersleeve was detained approximately 100 to 200 feet outside of his home prior to the search of that residence. (Docket No. 39 at 9; designated as "X" on Exhibit F). The defendant was placed in handcuffs and provided his Miranda warnings at that time. (Docket No. 33 at 9). Galie acknowledged that Gildersleeve was not free to go at that time. (Docket No. 33 at 13).

It is undisputed that Gildersleeve was detained by the police at the corner of 24th Street and Ferry Avenue in connection with the planned execution a search warrant of his residence at 527 24th Street. On February 19, 2013, the Supreme Court issued its decision in Bailey v. United States, 568 U.S. –, 133 S.Ct. 1031 (2013), addressing the legality of the seizure and detention of a person at some distance away from the premises to be searched. There, the Supreme Court noted that in Michigan v. Summers, 452 U.S. 692 (1981) it has previously determined that detention incident to the execution of a search warrant was permissible. Such detention without probable cause or reasonable suspicion was justified in Summers based upon three important law enforcement interests: (1) the interest in minimizing the risk of harm to the officers; (2) the interest of facilitating the orderly completion of the search if the occupants of the premises are present; and (3) the legitimate law enforcement interest in preventing flight in the event that incriminating evidence is found. Bailey, 133 S.Ct. at 10-38-1041. In Bailey, the defendant had

left the premises to be searched and was approximately one mile away when the police stopped and seized him and transported him back to the premises in connection with the execution of the search warrant. The Court held that none of the three interests identified in Summers applied with the same force to the detention of individuals beyond the immediate vicinity of the premises to be searched. In this regard, the Court stated:

> In sum, of the three law enforcement interests identified to justify the detention in Summers, none applies with the same or similar force to the detention of recent occupants beyond the immediate vicinity of the premises to be searched. Any of the individual interests is also insufficient, on its own, to justify an expansion of the rule in Summers to permit the detention of a former occupant, wherever he may be found away from the scene of the search. This would give officers too much discretion. The categorical authority to detain incident to the execution of a search warrant must be limited to the immediate vicinity of the premises to be searched.

Bailey, 133 S.Ct. at 1041. While the Supreme Court declined to more exactly define "immediate vicinity," the following guidance was provided:

> A spatial constraint defined by the immediate vicinity of the premises to be searched is therefore required for detentions incident to the execution of a search warrant. The police action permitted here—the search of a residence—has a spatial dimension, and so a spatial or geographical boundary can be used to determine the area within which both the search and detention incident to that search may occur. ***Limiting the rule in Summers to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant ensures that the scope of the detention incident to a search is confined to its underlying justification.*** Once an occupant is beyond the immediate vicinity of the premises to be searched, the search-related law enforcement interests are diminished and the intrusiveness of the detention is more severe. ... Here, petitioner was detained at a point beyond any reasonable understanding of the immediate vicinity of the premises in question; and so this case presents neither the necessity nor the occasion to further define the meaning of immediate vicinity. ***In closer cases courts can***

> *consider a number of factors to determine whether an occupant was detained within the immediate vicinity of the premises to be searched, including the lawful limits of the premises, whether the occupant was within the line of sight of his dwelling, the ease of reentry from the occupant's location, and other relevant factors.*

Bailey, 133 S.Ct. at 1042.

In the instant case, the government argues that the detention was permissible under Bailey because Gildersleeve was stopped and seized within the line of sight of the premises to be searched. (Docket No. 41 at pages 6-7). The record in this case reflects that the officers involved in the execution of the search warrant intended to seize and detain Gildersleeve in connection with the execution of the search warrant irrespective of Gildersleeve's location at that time. In this regard, Lt. Del Porto instructed Corcoran to detain Gildersleeve if he saw him again without any discussion of geographic limitation. (Docket No. 39 at page 8). When Gildersleeve was first spotted he was walking *away* from 527 24th Street (designated as "O" on Exhibit F), when he was stopped he was across the street on the 400 block of 24th Street (designated as "X" on Exhibit F). The government does not allege that Gildersleeve was walking back to 527 24th Street at the time he was stopped. The government makes no attempt to articulate a factual link between the detention of Gildersleeve under these circumstances and any one of the three interests articulated in Summers. Based upon the record in this case, the Court cannot conclude that the seizure of Gildersleeve comports with the Supreme Court's admonishment to limit "the rule in Summers to the area in which an occupant poses a real threat to the safe and efficient execution of a search warrant" to ensure that the scope of detention incident to a search is confined to its underlying justification. Bailey at 133 S.Ct. at 1042. Thus, the police improperly detained Gildersleeve and brought him to 527 24th Street for the purposes of executing a search warrant for that premises.

13

The search warrant in this case also provided for the search of Gildersleeve's person. Despite two hearings, and multiple filings, the government never asserted that Gildersleeve was detained to effectuate the search warrant on his person. Neither Galie, nor Corcoran, testified that Gildersleeve was stopped and detained so that they could search his person pursuant to the search warrant. Indeed, Corcoran testified that he did *not* search Gildersleeve when Gildersleeve was stopped and brought to 527 24th Street. (Docket No. 39 at 14). After the second hearing, *the Court* raised the issue and requested that the parties submit argument on what, if any, impact the fact that the search warrant authorized the search of Gildersleeve's person would have with respect to the application of Bailey. (Docket No. 42). The government responded, in a conclusory manner, that because the search warrant in this case *authorized* the search of Gildersleeve's person, that fact "takes this case out of the Bailey analysis." (Docket No. 46 at 2-4). However, there is no factual evidence in the record to support the contention that Gildersleeve was stopped and detained to effectuate the search of his person authorized by the search warrant. In fact, the record in this case does not reflect that Gildersleeve was ever searched pursuant to the search warrant. Instead, all representations have been that Gildersleeve was detained in connection with the search of the premises at 527 24th Street. Based upon this record, the Court cannot conclude that Gildersleeve was detained pursuant to the search warrant authorizing the search of his person.

Because the Court finds that Gildersleeve's detention was improper in light of Bailey, the statements made by Gildersleeve during the execution of the search warrant should be suppressed. Where a defendant makes statements after being illegally arrested or detained, the Supreme Court has held that the government has the burden to demonstrate, through

14

circumstantial evidence, that the statements were an act of free will sufficient to purge the primary taint of the unlawful detention. Kaupp v. Texas, 538 U.S. 626 (2003)(State had burden to establish through circumstantial evidence that defendant's confession taken after he was illegally arrested should not be suppressed because it was act of free will sufficient to purge primary taint of unlawful invasion, and relevant considerations included observance of Miranda, temporal proximity of arrest and confession, presence of intervening circumstances, and, particularly, purpose and flagrancy of official misconduct.). See also Brown v. Illinois, 422 U.S. 590, 603(1975)(a confession obtained by exploitation of an illegal arrest may not be used against a criminal defendant.). The government has not met its burden in this regard. On this issue, the government asserts, by footnote, only that because Gildersleeve chose not to testify at the suppression hearing, there is no evidence to support the conclusion that he did not voluntarily waive his Miranda rights. (Docket No. 35 at 5, n.5). Such an argument, if accepted, would shift the burden to the defendant. Moreover, the Supreme Court has held that Miranda warnings "alone and *per se*" do not necessarily "break, for Fourth Amendment purposes, the causal connection between the illegality and the confession." Kaupp, 538 U.S. at 632, quoting Brown, 422 U.S. at 603. The government has not demonstrated a substantial passage of time, or any meaningful intervening event, between Gildersleeve's illegal detention and the making of the statements. In light of the record in this case, it is recommended that the statements made by Gildersleeve as a result of his illegal detention be suppressed.

## Conclusion

It is recommended that the motion to suppress be granted in part and denied in part consistent with the above.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen(14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y. Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y. Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v.

16

Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
April 19, 2013